# EXHIBIT A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 19 2016

Sherri R. Carter, Executive Officer/Clerk
By Y. Husen, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

GATE GOURMET; ANGELA JONES and DOES 1 through 50, Inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ADOLFO ESTRADA and LOURDES ESTRADA

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| (El nombre y dirección de la corte es): Los Angeles<br>825 Maple Avenue, Torrance, CA 90503-5096 | (Número del Caso): YC071760 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Philip P. DeLuca, Esq., 5820 E. Naples Plaza, Belmont Shore, CA 90803, (562) 987-1300

| DATE:<br>(Fecha) DEC 19 2016 | Clerk, by<br>(Secretario) Sherri R. Carter Y. Husen | , Deputy<br>(Adjunto) |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* Gate Gourmet

   under: ☑ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☑ by personal delivery on *(date):* 1/11/17

[SEAL]

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Page 1 of 1<br>Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

REMOVAL EXHIBIT A 001

1 | Philip P. DeLuca; State Bar No. 158633
LAW OFFICES OF PHILIP P. DeLUCA
2 | 5820 E. Naples Plaza
Belmont Shore, CA. 90803
3 | Telephone  : (562) 987-1300
Telecopier  : (562) 987-1310
4 |
Attorneys for Plaintiff,
5 | ADOLFO ESTRADA and LOURDES ESTRADA

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 19 2016

Sherri R. Carter, Executive Officer/Clerk
By Y. Husen, Deputy

6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8          FOR THE COUNTY OF LOS ANGELES, SOUTHWEST DISTRICT

9

10 | ADOLFO ESTRADA and LOURDES ESTRADA,

11              Plaintiffs,

12         v.

13 | GATE GOURMET; ANGELA JONES and DOES 1 through 50, Inclusive,

14

15

16              Defendants.

Case No.: **Y C 0 7 1 7 6 0**

PLAINTIFFS, ADOLFO ESTRADA AND LOURDES ESTRADA'S COMPLAINT FOR DAMAGES:

1. Wrongful Termination in Violation of Public Policy;
2. Wrongful Termination in Violation of Implied Employment Agreement;
3. Gender Discrimination;
4. Workplace Harassment;
5. Disability Discrimination;
6. Retaliation for Engaging in Protected Activity;
7. Failure to Prevent Discrimination, Harassment and/or Retaliation;
8. Failure to Provide a Workplace Environment Free from Discrimination, Harassment and Retaliation;
9. Loss of Consortium

DEMAND FOR JURY TRIAL

17

18

19

20

21

22

23         COMES NOW Plaintiffs, ADOLFO ESTRADA and LOURDES ESTRADA and

24 | hereby complain and allege as follows:

25                              **PARTIES**

26         1.    At all relevant times, Plaintiffs, ADOLFO ESTRADA and LOURDES ESTRA

27 | DA are residents of the State of California.

28         2.    The employment contract to which Plaintiff, ADOLFO ESTRADA sues

PLAINTIFFS COMPLAINT FOR DAMAGES

REMOVAL EXHIBIT A 002

1   herein was made in and to be performed in the State of California.

2       3.      At all material times, Plaintiff, ADOLFO ESTRADA worked as an employee

3   for Defendant, GATE GOURMET and DOES 1 through 50, Inclusive, and each of them, in

4   the County of Los Angeles, State of California.

5       4.      Plaintiff, ADOLFO ESTRADA is informed and believes that Defendant,

6   GATE GOURMET, is a California Corporation with it's principal place of business in the

7   City of Los Angeles, County of Los Angeles, State of California.

8       5.      Plaintiff, ADOLFO ESTRADA is informed and believes that Defendant,

9   ANGELA JONES is an agent and/or employee of Defendant, GATE GOURMET.

10      6.      That the names and capabilities of the Defendants named herein as

11  DOES 1 through 50, Inclusive, whether individual, corporate, associate, or otherwise, are

12  unknown to Plaintiffs, ADOLFO ESTRADA and LOURDES ESTRADA who therefore sue

13  such Defendants by fictitious names under California Code of Civil Procedure §474.

14  Plaintiffs, ADOLFO ESTRADA and LOURDES ESTRADA will amend this Complaint to

15  show such true names and capacities when they have been determined. That each

16  Defendant was an agent of the other Defendants and approved and/or ratified the conduct

17  of the other Defendants.

18      7.      That each Defendant was an agent of the other Defendant and ratified the

19  conduct of the other Defendant(s).

20      8.      On or about January 12, 2016, Plaintiff, ADOLFO ESTRADA filed a

21  Complaint of Employment Discrimination before the State of California Department of Fair

22  Employment and Housing Under the California Fair Employment and Housing Act alleging

23  discrimination, harassment, retaliation, denied a work environment free of discrimination

24  and/or retaliation, termination because of his disability, engagement in protected activity,

25  family care or medical leave, sex and/or gender as to Defendant, GATE GOURMET. On

26  or about January 12, 2016, Plaintiff, ADOLFO ESTRADA received a Right to Sue Notice

27  from the DFEH.

28  ///

PLAINTIFFS COMPLAINT FOR DAMAGES                    2

REMOVAL EXHIBIT A 003

**FACTUAL BACKGROUND**

9.     Plaintiff, ADOLFO ESTRADA incorporates by reference paragraphs 1 through 8 consisting of general allegations as though set forth in full herein.

10.    On or about September 15, 2014 Plaintiff, ADOLFO ESTRADA (hereinafter referred to as Mr. ESTRADA) commenced his employment with Defendant, GATE GOURMET as a Human Resources Generalist and earned $26.44 per hour.  Upon hire Mr. ESTRADA was under the supervision of Senior Human Resources Manager, Defendant, ANGELA JONES (hereinafter referred to as Ms. JONES) and Human Resources Director, James Anderson.  During the hiring process, Mr. ESTRADA was instructed to fill out and sign paperwork.  He asked to receive copies of what he signed, however, he was never provided with copies.

11.    During Mr. ESTRADA's 90 day probation period, he was not provided with training regarding company policies nor procedures.  Mr. ESTRADA continually requested formal training on policies and procedures from Ms. JONES, verbally and in writing, but to no avail.

12.    On or about December 15, 2014, Mr. ESTRADA met with James Anderson. During this meeting Mr. ESTRADA learned that the reason he was hired was because of his gender. Mr. Anderson told Mr. ESTRADA that he was hired because he was male and there would not be any drama.  He further explained that, "the Human Resources Department had been going through a lot drama because it was all female." These comments made Mr. ESTRADA feel uncomfortable.  Mr. ESTRADA had over eight (8) years of experience and training in Human Resources and his gender had never been a factor for being hired.

13.    A few weeks later, James Anderson resigned from GATE GOURMET.  After Mr. Anderson's resignation, Mr. ESTRADA's workload began to increase every week.  Mr. ESTRADA requested assistance and guidance from Ms. JONES, who instead told him to "better his time".   He asked her for examples of how to better his time and with breaking down the workload but did not receive any assistance nor given any suggestions.  This

REMOVAL EXHIBIT A 004

1  caused Mr. ESTRADA unnecessary stress and also frustration because he tried his best
2  to improve and asked for help, however, he felt that Ms. JONES did not want to help him.
3      14.    Mr. ESTRADA was discriminated against and harassed because of his
4  gender.  He was the only male employee in his department.  He was clearly treated
5  different than the female employees.  Further, he was responsible for 500 employees,
6  others were only responsible for 300.
7      15.    On or about February 3, 2015 Mr. ESTRADA suffered a head injury
8  during the course and scope of his employment.  Thereafter, Mr. ESTRADA filed a
9  Workers' Compensation Claim.
10     16.    In or about late March 10, 2015 Ms. JONES requested to meet with Mr.
11 ESTRADA.  Upon entering the meeting, Ms. JONES closed the door and said, "Maybe
12 this job is not for you.  Have you ever thought about it?"  Mr. ESTRADA was
13 flabbergasted.  He did not understand why Ms. JONES would say that to him.  After his 90
14 day probation review there was no indication that his work performance was an issue.  She
15 further stated to Mr. ESTRADA, "I will be more than happy to allow you to interview with
16 the condition that if in the next 90 days you do not find a job you will be forced to resign
17 and only corporate and myself would know about this." Mr. ESTRADA was too distraught
18 to continue their conversation and responded, "I have work to do.  We will have to
19 continue this conversation later." After this meeting, Mr. ESTRADA noticed that Ms.
20 JONES' attitude toward him was very negative.
21     17.    On or about March 23, 2015 Mr. ESTRADA filed a Formal Complaint via
22 email regarding Ms. JONES' unprofessional behavior in the workplace.  Also, he reported
23 that he noticed a change in behavior from Ms. JONES' since his work related injury.  Mr.
24 ESTRADA felt he was being discriminated against for filing a workers' compensation claim
25 and for his gender.  Mr. ESTRADA expressed his concerns about Ms. JONES and
26 explained how her behavior affected the entire department.  He stated that other
27 colleagues described the Human Resources Department as "toxic" and "hostile". Mr.
28 ESTRADA further recommended an investigation.

PLAINTIFFS COMPLAINT FOR DAMAGES                4

REMOVAL EXHIBIT A 005

18.   On or about April 21, 2015 Mr. ESTRADA received a "Confidential Memorandum" from Ms. JONES notifying him that he was being placed on a Performance Improvement Plan as a result of his alleged inability to meet performance expectations. Thereafter, Mr. ESTRADA met with Ms. JONES every two (2) weeks regarding his performance. Mr. ESTRADA believes this was done to harass him and in retaliation for filing a complaint against Ms. JONES. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

19.   On or about May 13, 2015, Mr. ESTRADA's father passed away. He sent an email to Ms. JONES requesting a week off and specifically asked to use "vacation" time off. Upon Mr. ESTRADA's return, he learned that Ms. JONES has placed him on a Leave of Absence instead of the requested vacation time and was only paid for two (2) days instead of five (5). Mr. ESTRADA believes and therefore alleges that this was done to further harass him in the workplace.

20.   On or about May 28, 2015 Mr. ESTRADA received a "Confidential Memorandum" from Ms. JONES regarding Performance Improvement Plan, Follow Up Meeting wherein Ms. JONES alleges a numerous amount of false complaints regarding his work. Mr. ESTRADA believes this was done to harass him and set him up for termination. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

21.   On or about May 28, 2015 Mr. ESTRADA wrote an email to Director of Human Resources, William McGowen with his concerns regarding Ms. JONES. In his report, Mr. ESTRADA addressed his Performance Improvement Plan meeting he had with Ms. JONES. Mr. ESTRADA informed him that Ms. JONES mentioned his time management and that he did not feel Ms. JONES was understanding his explanations as to why, at times, it was difficult for him to complete his work. Also, during this meeting he asked Ms. JONES about scheduling him for the OL 101 Training because he notice that all other co-workers had taken the course. Ms. JONES said that employees who had taken the training course had been employed by the company for over a year. Mr. ESTRADA explained that he had requested training ever since his Performance

REMOVAL EXHIBIT A 006

1   Improvement Plan was issued, however, had not received it. Also, Mr. ESTRADA

2   informed Mr. McGowen of an incident between himself and Ms. JONES where they both

3   raised their voices at each other. Ms. JONES and Roy O. approached Mr. ESTRADA

4   questioned his recent loss of his family member and asked if he needed additional time

5   off, however, Mr. ESTRADA confirmed that he was okay and apologized to Ms. JONES

6   for his tone. Others had raised their voices at Ms. JONES before, however, Mr.

7   ESTRADA believes that it was made a bigger issue because of his gender.

8       22.   In or about July, 2015 Mr. ESTRADA attended a meeting wherein he was

9   informed that their schedules would have to change to work some night. Mr. ESTRADA

10   expressed his concern about working night shift because he took his kids to school every

11   morning. A few days after the meeting, Mr. ESTRADA learned that he was the only

12   employee scheduled to work ten (10) days of graveyard shift and every other team

13   member only had to work five (5) days of graveyard shift per month. Mr. ESTRADA

14   alleges he was discriminated against because of his gender.

15       23.   On or about July 3, 2015 Mr. ESTRADA suffered injuries to his face and

16   arm, when the left side of his face and arm became numb during the course and scope of

17   his employment. Mr. ESTRADA informed the Finance Manager and Safety Department

18   that he was not feeling well and needed medical attention. He was denied medical

19   attention and told to write a statement. Thereafter, he lost feeling to the left side of his

20   body. Mr. ESTRADA became frightened and drove himself to see his doctor. His doctor

21   informed him that he showed signs of high anxiety and stress that were causing a mild

22   stroke. Mr. ESTRADA drove home and received a voice message from Ms. JONES and

23   William McGowan informing him that he was being suspended for Job Abandonment. He

24   immediately called William McGowen to explain what happened, however, Mr. McGowen

25   insisted that Mr. ESTRADA left the site without informing a member of management and

26   that was considered abandonment. He instructed Mr. ESTRADA not to return to work and

27   to write a statement. Mr. ESTRADA filed a Workers' Compensation Claim arising out of

28   this incident.

REMOVAL EXHIBIT A 007

24.    Mr. ESTRADA believes and therefore alleges that several other employees had to take "stress leave" due to a hostile work environment, in part created by of Ms. JONES.

25.    On or about July 4, 2015 Paula Morales called Mr. ESTRADA advising him to go to a clinic.

26.    Approximately five (5) days thereafter, William McGowen called Mr. ESTRADA and notified him that he could return to work and begin his night shift.

27.    On or about August 11, 2015 Mr. ESTRADA received a "Confidential Memorandum" from Ms. JONES regarding Performance Improvement Plan, Follow Up Meeting wherein Ms. JONES alleges a numerous amount of false complaints regarding his work. Mr. ESTRADA believes this was done to harass him and set him up for termination. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

28.    On or about August 13, 2015 Mr. ESTRADA was terminated by Ms. JONES. Mr. ESTRADA questioned why he was being terminated effective immediately and was not eligible for re-hire by GATE GOURMET, Inc. Or by any of it subsidiary or affiliate companies.  Ms. JONES responded with, "Good Luck in your future endeavors." The termination letter provided to Mr. ESTRADA accused him of not completing a training course "learn@gate training", however, this was false.  Mr. ESTRADA did, in fact, complete the training course in or about mid July, 2015 (during his night shift).  No certification of completion was available therefore there was no proof that he complete the course.  Further, the letter provided information that Mr. ESTRADA's final pay would be provided and would include any unused accrued vacation time, floating holidays and/or compensatory time.  However, Mr. ESTRADA was owed 36 hours of accumulated vacation pay.

29.    On or about August 13, 2015 Mr. ESTRADA filed a Workers' Compensation Claim for injuries he suffered to his psyche, cerebrovascular system, abdomen and repetitive trauma between the dates of September 15, 2014 to April 29, 2015.

30.    Jaime Villanueva witnessed Ms. JONES "throwing Mr. ESTRADA under the

REMOVAL EXHIBIT A 008

1    bus" because she said that Mr. ESTRADA was the reason why reports were incomplete

2    and evidence lost.  Mr. ESTRADA was not aware that he was responsible for those

3    reports.

4        31.    During his employment, Mr. ESTRADA was denied the opportunity to

5    participate in the Tuition Reimbursement Program despite numerous requests. Mr.

6    ESTRADA was advised by his co-worker Esmeralda Morales that William McGowen

7    agreed to pay her tuition at Loyola Marymount. Mr. ESTRADA knew that this opportunity

8    was open to all employees who wanted to complete their education.  Mr. ESTRADA

9    believes that he was denied this program because of his gender.

10       32.    As a result of the gender discrimination, harassment, disability discrimination

11   and retaliation Mr. ESTRADA suffered at GATE GOURMET and continues to suffer from

12   emotional distress, stress, anxiety and insomnia.

13                        **FIRST CAUSE OF ACTION**

14            **(Wrongful Termination in Violation of Public Policy)**

15       33.    The allegations of Paragraphs 1 through 32 are re-alleged and incorporated

16   herein by reference. That this Cause of Action is pled as against Defendants, GATE

17   GOURMET and DOES 1 through 50, inclusive, and each of them.

18       34.    Plaintiff is informed and believes, and thereon alleges, that on or about

19   August 13, 2015, Plaintiff's employment was terminated by Defendant, GATE GOURMET

20   because of his gender, among other things.

21       35.    That such conduct by Defendants, and each of them, was in violation of

22   public policy, including, but not limited to, Government Code §12940.

23       36.    On or about September 15, 2014 Mr. ESTRADA commenced his

24   employment with Defendant, GATE GOURMET as a Human Resources Generalist.  Upon

25   hire Mr. ESTRADA was under the supervision of Senior Human Resources Manager,

26   Defendant, Ms. JONES and Human Resources Director, James Anderson.

27       37.    During Mr. ESTRADA's 90 day probation period, he was not provided with

28   training regarding company policies nor procedures.  Mr. ESTRADA continually requested

REMOVAL EXHIBIT A 009

1  formal training on policies and procedures from Ms. JONES, verbally and in writing, but to

2  no avail.

3      38.    On or about December 15, 2014, Mr. ESTRADA met with James Anderson.

4  During this meeting Mr. ESTRADA learned that the reason he was hired was because of

5  his gender. Mr. Anderson told Mr. ESTRADA that he was hired because he was male and

6  there would not be any drama. He further explained that, "the Human Resources

7  Department had been going through a lot drama because it was all female." These

8  comments made Mr. ESTRADA feel uncomfortable. Mr. ESTRADA had over eight (8)

9  years of experience and training in Human Resources and his gender had never been a

10  factor for being hired.

11      39.    A few weeks later, James Anderson resigned from GATE GOURMET. After

12  Mr. Anderson's resignation, Mr. ESTRADA's workload began to increase every week. Mr.

13  ESTRADA requested assistance and guidance from Ms. JONES, who instead told him to

14  "better his time". He asked her for examples of how to better his time and with breaking

15  down the workload but did not receive any assistance nor given any suggestions. This

16  caused Mr. ESTRADA unnecessary stress and also frustration because he tried his best

17  to improve and asked for help, however, he felt that Ms. JONES did not want to help him.

18      40.    Mr. ESTRADA was discriminated against and harassed because of his

19  gender. He was the only male employee in his department. He was clearly treated

20  different than the female employees. Further, he was responsible for 500 employees,

21  others were only responsible for 300.

22      41.    On or about February 3, 2015 Mr. ESTRADA suffered a head injury

23  during the course and scope of his employment. Thereafter, Mr. ESTRADA filed a

24  Workers' Compensation Claim.

25      42.    In or about late March 10, 2015 Ms. JONES requested to meet with Mr.

26  ESTRADA. Upon entering the meeting, Ms. JONES closed the door and said, "Maybe

27  this job is not for you. Have you ever thought about it?" Mr. ESTRADA was

28  flabbergasted. He did not understand why Ms. JONES would say that to him. After his 90

REMOVAL EXHIBIT A 010

1   day probation review there was no indication that his work performance was an issue. She

2   further stated to Mr. ESTRADA, "I will be more than happy to allow you to interview with

3   the condition that if in the next 90 days you do not find a job you will be forced to resign

4   and only corporate and myself would know about this." Mr. ESTRADA was too distraught

5   to continue their conversation and responded, "I have work to do.  We will have to

6   continue this conversation later." After this meeting, Mr. ESTRADA noticed that Ms.

7   JONES' attitude toward him was very negative.

8        43.    On or about March 23, 2015 Mr. ESTRADA filed a Formal Complaint via

9   email regarding Ms. JONES' unprofessional behavior in the workplace.  Also, he reported

10  that he noticed a change in behavior from Ms. JONES' since his work related injury.  Mr.

11  ESTRADA felt he was being discriminated against for filing a workers' compensation claim

12  and for his gender.  Mr. ESTRADA expressed his concerns about Ms. JONES and

13  explained how her behavior affected the entire department.  He stated that other

14  colleagues described the Human Resources Department as "toxic" and "hostile". Mr.

15  ESTRADA further recommended an investigation.

16       44.    On or about April 21, 2015 Mr. ESTRADA received a "Confidential

17  Memorandum" from Ms. JONES notifying him that he was being placed on a Performance

18  Improvement Plan as a result of his alleged inability to meet performance expectations.

19  Thereafter, Mr. ESTRADA met with Ms. JONES every two (2) weeks regarding his

20  performance.  Mr. ESTRADA believes this was done to harass him and in retaliation for

21  filing a complaint against Ms. JONES.  As such, Mr. ESTRADA refused to sign the

22  Confidential Memorandum.

23       45.    On or about May 13, 2015, Mr. ESTRADA's father passed away. He sent an

24  email to Ms. JONES requesting a week off and specifically asked to use "vacation" time

25  off.  Upon Mr. ESTRADA's return, he learned that Ms. JONES has placed him on a Leave

26  of Absence instead of the requested vacation time and was only paid for two (2) days

27  instead of five (5).  Mr. ESTRADA believes and therefore alleges that this was done to

28  further harass him in the workplace.

REMOVAL EXHIBIT A 011

46.    On or about May 28, 2015 Mr. ESTRADA received a "Confidential Memorandum" from Ms. JONES regarding Performance Improvement Plan, Follow Up Meeting wherein Ms. JONES alleges a numerous amount of false complaints regarding his work. Mr. ESTRADA believes this was done to harass him and set him up for termination. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

47.    On or about May 28, 2015 Mr. ESTRADA wrote an email to Director of Human Resources, William McGowen with his concerns regarding Ms. JONES. In his report, Mr. ESTRADA addressed his Performance Improvement Plan meeting he had with Ms. JONES. Mr. ESTRADA informed him that Ms. JONES mentioned his time management and that he did not feel Ms. JONES was understanding his explanations as to why, at times, it was difficult for him to complete his work. Also, during this meeting he asked Ms. JONES about scheduling him for the OL 101 Training because he notice that all other co-workers had taken the course. Ms. JONES said that employees who had taken the training course had been employed by the company for over a year. Mr. ESTRADA explained that he had requested training ever since his Performance Improvement Plan was issued, however, had not received it. Also, Mr. ESTRADA informed Mr. McGowen of an incident between himself and Ms. JONES where they both raised their voices at each other. Ms. JONES and Roy O. approached Mr. ESTRADA questioned his recent loss of his family member and asked if he needed additional time off, however, Mr. ESTRADA confirmed that he was okay and apologized to Ms. JONES for his tone. Others had raised their voices at Ms. JONES before, however, Mr. ESTRADA believes that it was made a bigger issue because of his gender.

48.    In or about July, 2015 Mr. ESTRADA attended a meeting wherein he was informed that their schedules would have to change to work some night. Mr. ESTRADA expressed his concern about working night shift because he took his kids to school every morning. A few days after the meeting, Mr. ESTRADA learned that he was the only employee scheduled to work ten (10) days of graveyard shift and every other team member only had to work five (5) days of graveyard shift per month. Mr. ESTRADA

REMOVAL EXHIBIT A 012

alleges he was discriminated against because of his gender.

49.    On or about July 3, 2015 Mr. ESTRADA suffered injuries to his face and arm, when the left side of his face and arm became numb during the course and scope of his employment. Mr. ESTRADA informed the Finance Manager and Safety Department that he was not feeling well and needed medical attention. He was denied medical attention and told to write a statement. Thereafter, he lost feeling to the left side of his body. Mr. ESTRADA became frightened and drove himself to see his doctor. His doctor informed him that he showed signs of high anxiety and stress that were causing a mild stroke. Mr. ESTRADA drove home and received a voice message from Ms. JONES and William McGowan informing him that he was being suspended for Job Abandonment. He immediately called William McGowen to explain what happened, however, Mr. McGowen insisted that Mr. ESTRADA left the site without informing a member of management and that was considered abandonment. He instructed Mr. ESTRADA not to return to work and to write a statement. Mr. ESTRADA filed a Workers' Compensation Claim arising out of this incident.

50.    Mr. ESTRADA believes and therefore alleges that several other employees had to take "stress leave" due to a hostile work environment, in part created by of Ms. JONES.

51.    On or about July 4, 2015 Paula Morales called Mr. ESTRADA advising him to go to a clinic.

52.    Approximately five (5) days thereafter, William McGowen called Mr. ESTRADA and notified him that he could return to work and begin his night shift.

53.    On or about August 11, 2015 Mr. ESTRADA received a "Confidential Memorandum" from Ms. JONES regarding Performance Improvement Plan, Follow Up Meeting wherein Ms. JONES alleges a numerous amount of false complaints regarding his work. Mr. ESTRADA believes this was done to harass him and set him up for termination. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

54.    On or about August 13, 2015 Mr. ESTRADA was terminated by Ms. JONES.

REMOVAL EXHIBIT A 013

Mr. ESTRADA questioned why he was being terminated effective immediately and was not eligible for re-hire by GATE GOURMET, Inc. Or by any of it subsidiary or affiliate companies. Ms. JONES responded with, "Good Luck in your future endeavors." The termination letter provided to Mr. ESTRADA accused him of not completing a training course "learn@gate training", however, this was false. Mr. ESTRADA did, in fact, complete the training course in or about mid July, 2015 (during his night shift). No certification of completion was available therefore there was no proof that he complete the course. Further, the letter provided information that Mr. ESTRADA's final pay would be provided and would include any unused accrued vacation time, floating holidays and/or compensatory time. However, Mr. ESTRADA was owed 36 hours of accumulated vacation pay.

55.    On or about August 13, 2015 Mr. ESTRADA filed a Workers' Compensation Claim for injuries he suffered to his psyche, cerebrovascular system, abdomen and repetitive trauma between the dates of September 15, 2014 to April 29, 2015.

56.    Jaime Villanueva witnessed Ms. JONES "throwing Mr. ESTRADA under the bus" because she said that Mr. ESTRADA was the reason why reports were incomplete and evidence lost. Mr. ESTRADA was not aware that he was responsible for those reports.

57.    During his employment, Mr. ESTRADA was denied the opportunity to participate in the Tuition Reimbursement Program despite numerous requests. Mr. ESTRADA was advised by his co-worker Esmeralda Morales that William McGowen agreed to pay her tuition at Loyola Marymount. Mr. ESTRADA knew that this opportunity was open to all employees who wanted to complete their education. Mr. ESTRADA believes that he was denied this program because of his gender.

58.    By reason of the foregoing, Plaintiff has suffered harm including, but not limited to, humiliation, embarrassment, and mental anguish, all to Plaintiff's damage in an amount to be shown according to proof. Plaintiff is informed and believes, and thereon alleges, that he will be required to employ the services of physicians, nurses and other

PLAINTIFFS COMPLAINT FOR DAMAGES                    13

**REMOVAL EXHIBIT A 014**

health care professionals in the future, in an amount to be shown according to proof.

59.    The conduct of Defendants in terminating Plaintiff's employment without good, just or legitimate cause and because of his gender violated California public policy including, but not limited to, California Government Code §12940.  Such actions were therefore done in conscious disregard of the rights of Plaintiff to be free of gender discrimination in the workplace, among other rights secured under California law.  Plaintiff is informed and believes, and thereon alleges, that his termination by Defendants, and each of them, was done with intent to cause injury to Plaintiff. As a consequence of the aforesaid oppressive, malicious and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof.

60.    On or about January 12, 2016, Plaintiff filed a Complaint of Employment Discrimination before the State of California Department of Fair Employment and Housing Under the California Fair Employment and Housing Act alleging discrimination, harassment, retaliation, denied a work environment free of discrimination and/or retaliation, termination because of his disability, engagement in protected activity, family care or medical leave, sex and/or gender as to Defendant, GATE GOURMET.

61.    WHEREFORE, Plaintiff, ADOLFO ESTRADA contends that he was injured in body and mind and requests compensation for the same.

62.    WHEREFORE, Plaintiff, ADOLFO ESTRADA lost his employment with Defendants, GATE GOURMET and is seeking compensatory damages for any and all lost income from his last date of employment with Defendant, GATE GOURMET through and including the present time, including front pay, back pay, and any and all other legal remedies available to him.

63.    WHEREFORE, Plaintiff, ADOLFO ESTRADA is seeking General Damages, in a sum to be determined, according to proof.

64.    WHEREFORE, Plaintiff, ADOLFO ESTRADA is seeking Exemplary and Punitive Damages in a sum to be determined, according to proof.

///

PLAINTIFFS COMPLAINT FOR DAMAGES                    14

REMOVAL EXHIBIT A 015

### SECOND CAUSE OF ACTION

**(Wrongful Termination In Violation of Implied Employment Agreement)**

65.     The allegations of Paragraphs 1 through 64 are re-alleged and incorporated herein by reference. That this Cause of Action is pled as against Defendants, GATE GOURMET and DOES 1 through 50, Inclusive, and each of them.

66.     During the entire course of Plaintiff's employment with Defendant, and each of them, there existed an implied employment agreement between Plaintiff, ADOLFO ESTRADA and Defendant, GATE GOURMET and each of them, which included but was not limited to, the following terms and conditions:

(A)     Plaintiff, ADOLFO ESTRADA would be able to continue his employment with Defendants indefinitely as long as he carried out his duties in a proper and competent manner;

(B)     Plaintiff, ADOLFO ESTRADA would not be denied fair treatment nor be terminated other than for good cause; and

(C)     Defendants would not retaliate against Plaintiff, ADOLFO ESTRADA on the basis of his gender nor for filing a workers compensation claim.

67.     Plaintiff, ADOLFO ESTRADA alleges that his employment with Defendants and each of them was wrongfully terminated in violation of a contract of employment between he and Defendants embodied in certain writings, including an employee handbook, rules and regulations and other appurtenant documents.

68.     So long as Plaintiff, ADOLFO ESTRADA continued to competently perform his work and in accord with said employee handbook and rules and regulations, did everything he was supposed to do, under the agreement, his employment with Defendants would not be jeopardized.

69.     Plaintiff, ADOLFO ESTRADA alleges that he did everything under the contract, performed all duties under the contract and was subjected to retaliation, resulting in Defendants and each of them violating their own policies and procedures and terminating Plaintiff from his employment as a result.

PLAINTIFFS COMPLAINT FOR DAMAGES                    15

70.    Plaintiff, ADOLFO ESTRADA is claiming all damages, including front pay and back pay, lost wages and any and all other remedies available to him as a result of said breach of employment contract by Defendants and each of them.

### THIRD CAUSE OF ACTION

#### (Gender Discrimination)

71.    The allegations of Paragraphs 1 through 70, are re-alleged and incorporated herein by reference. That this Cause of Action is pled as against Defendants, GATE GOURMET, ANGELA JONES and each of them.

72.    Defendants were at all material times employers within the meaning of California Government Code §12926(d) and, as such, barred from discriminating or retaliating in employment decisions on the basis of gender as set forth in California Government Code §12940(a).

73.    Upon hire Mr. ESTRADA was under the supervision of Senior Human Resources Manager, Defendant, ANGELA JONES (hereinafter referred to as Ms. JONES) and Human Resources Director, James Anderson.

74.    During Mr. ESTRADA's 90 day probation period, he was not provided with training regarding company policies nor procedures. Mr. ESTRADA continually requested formal training on policies and procedures from Ms. JONES, verbally and in writing, but to no avail.

75.    On or about December 15, 2014, Mr. ESTRADA met with James Anderson. During this meeting Mr. ESTRADA learned that the reason he was hired was because of his gender. Mr. Anderson told Mr. ESTRADA that he was hired because he was male and there would not be any drama. He further explained that, "the Human Resources Department had been going through a lot drama because it was all female." These comments made Mr. ESTRADA feel uncomfortable. Mr. ESTRADA had over eight (8) years of experience and training in Human Resources and his gender had never been a factor for being hired.

76.    A few weeks later, James Anderson resigned from GATE GOURMET. After

REMOVAL EXHIBIT A 017

Mr. Anderson's resignation, Mr. ESTRADA's workload began to increase every week. Mr. ESTRADA requested assistance and guidance from Ms. JONES, who instead told him to "better his time". He asked her for examples of how to better his time and with breaking down the workload but did not receive any assistance nor given any suggestions. This caused Mr. ESTRADA unnecessary stress and also frustration because he tried his best to improve and asked for help, however, he felt that Ms. JONES did not want to help him.

77. Mr. ESTRADA was discriminated against and harassed because of his gender. He was the only male employee in his department. He was clearly treated different than the female employees. Further, he was responsible for 500 employees, others were only responsible for 300.

78. In or about late March 10, 2015 Ms. JONES requested to meet with Mr. ESTRADA. Upon entering the meeting, Ms. JONES closed the door and said, "Maybe this job is not for you. Have you ever thought about it?" Mr. ESTRADA was flabbergasted. He did not understand why Ms. JONES would say that to him. After his 90 day probation review there was no indication that his work performance was an issue. She further stated to Mr. ESTRADA, "I will be more than happy to allow you to interview with the condition that if in the next 90 days you do not find a job you will be forced to resign and only corporate and myself would know about this." Mr. ESTRADA was too distraught to continue their conversation and responded, "I have work to do. We will have to continue this conversation later." After this meeting, Mr. ESTRADA noticed that Ms. JONES' attitude toward him was very negative.

79. On or about March 23, 2015 Mr. ESTRADA filed a Formal Complaint via email regarding Ms. JONES' unprofessional behavior in the workplace. Also, he reported that he noticed a change in behavior from Ms. JONES' since his work related injury. Mr. ESTRADA felt he was being discriminated against for filing a workers' compensation claim and for his gender. Mr. ESTRADA expressed his concerns about Ms. JONES and explained how her behavior affected the entire department. He stated that other colleagues described the Human Resources Department as "toxic" and "hostile". Mr.

REMOVAL EXHIBIT A 018

ESTRADA further recommended an investigation.

80.    On or about April 21, 2015 Mr. ESTRADA received a "Confidential Memorandum" from Ms. JONES notifying him that he was being placed on a Performance Improvement Plan as a result of his alleged inability to meet performance expectations. Thereafter, Mr. ESTRADA met with Ms. JONES every two (2) weeks regarding his performance. Mr. ESTRADA believes this was done to harass him and in retaliation for filing a complaint against Ms. JONES. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

81.    On or about May 28, 2015 Mr. ESTRADA received a "Confidential Memorandum" from Ms. JONES regarding Performance Improvement Plan, Follow Up Meeting wherein Ms. JONES alleges a numerous amount of false complaints regarding his work. Mr. ESTRADA believes this was done to harass him and set him up for termination. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

82.    On or about May 28, 2015 Mr. ESTRADA wrote an email to Director of Human Resources, William McGowen with his concerns regarding Ms. JONES. In his report, Mr. ESTRADA addressed his Performance Improvement Plan meeting he had with Ms. JONES. Mr. ESTRADA informed him that Ms. JONES mentioned his time management and that he did not feel Ms. JONES was understanding his explanations as to why, at times, it was difficult for him to complete his work. Also, during this meeting he asked Ms. JONES about scheduling him for the OL 101 Training because he notice that all other co-workers had taken the course. Ms. JONES said that employees who had taken the training course had been employed by the company for over a year. Mr. ESTRADA explained that he had requested training ever since his Performance Improvement Plan was issued, however, had not received it. Also, Mr. ESTRADA informed Mr. McGowen of an incident between himself and Ms. JONES where they both raised their voices at each other. Ms. JONES and Roy O. approached Mr. ESTRADA questioned his recent loss of his family member and asked if he needed additional time off, however, Mr. ESTRADA confirmed that he was okay and apologized to Ms. JONES

REMOVAL EXHIBIT A 019

for his tone. Others had raised their voices at Ms. JONES before, however, Mr. ESTRADA believes that it was made a bigger issue because of his gender.

83.    In or about July, 2015 Mr. ESTRADA attended a meeting wherein he was informed that their schedules would have to change to work some night. Mr. ESTRADA expressed his concern about working night shift because he took his kids to school every morning. A few days after the meeting, Mr. ESTRADA learned that he was the only employee scheduled to work ten (10) days of graveyard shift and every other team member only had to work five (5) days of graveyard shift per month. Mr. ESTRADA alleges he was discriminated against because of his gender.

84.    On or about July 3, 2015 Mr. ESTRADA suffered injuries to his face and arm, when the left side of his face and arm became numb during the course and scope of his employment. Mr. ESTRADA informed the Finance Manager and Safety Department that he was not feeling well and needed medical attention. He was denied medical attention and told to write a statement. Thereafter, he lost feeling to the left side of his body. Mr. ESTRADA became frightened and drove himself to see his doctor. His doctor informed him that he showed signs of high anxiety and stress that were causing a mild stroke. Mr. ESTRADA drove home and received a voice message from Ms. JONES and William McGowan informing him that he was being suspended for Job Abandonment. He immediately called William McGowen to explain what happened, however, Mr. McGowen insisted that Mr. ESTRADA left the site without informing a member of management and that was considered abandonment.

85.    Mr. ESTRADA believes and therefore alleges that several other employees had to take "stress leave" due to a hostile work environment, in part created by of Ms. JONES.

86.    On or about August 11, 2015 Mr. ESTRADA received a "Confidential Memorandum" from Ms. JONES regarding Performance Improvement Plan, Follow Up Meeting wherein Ms. JONES alleges a numerous amount of false complaints regarding his work. Mr. ESTRADA believes this was done to harass him and set him up for

REMOVAL EXHIBIT A 020

termination. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

87.     On or about August 13, 2015 Mr. ESTRADA was terminated by Ms. JONES. Mr. ESTRADA questioned why he was being terminated effective immediately and was not eligible for re-hire by GATE GOURMET, Inc. Or by any of it subsidiary or affiliate companies. Ms. JONES responded with, "Good Luck in your future endeavors." The termination letter provided to Mr. ESTRADA accused him of not completing a training course "learn@gate training", however, this was false. Mr. ESTRADA did, in fact, complete the training course in or about mid July, 2015 (during his night shift). No certification of completion was available therefore there was no proof that he complete the course. Further, the letter provided information that Mr. ESTRADA's final pay would be provided and would include any unused accrued vacation time, floating holidays and/or compensatory time. However, Mr. ESTRADA was owed 36 hours of accumulated vacation pay.

88.     On or about August 13, 2015 Mr. ESTRADA filed a Workers' Compensation Claim for injuries he suffered to his psyche, cerebrovascular system, abdomen and repetitive trauma between the dates of September 15, 2014 to April 29, 2015.

89.     During his employment, Mr. ESTRADA was denied the opportunity to participate in the Tuition Reimbursement Program despite numerous requests. Mr. ESTRADA was advised by his co-worker Esmeralda Morales that William McGowen agreed to pay her tuition at Loyola Marymount. Mr. ESTRADA knew that this opportunity was open to all employees who wanted to complete their education. Mr. ESTRADA believes that he was denied this program because of his gender.

90.     As a result of the gender discrimination Mr. ESTRADA suffered at GATE GOURMET and continues to suffer from emotional distress, stress, anxiety and insomnia.

91.     Simply, if Plaintiff were female, he would not have been subjected to the discrimination, retaliation and harassment at GATE GOURMET, nor would his employment have been terminated.

92.     WHEREFORE, Plaintiff, ADOLFO ESTRADA contends that he was injured

REMOVAL EXHIBIT A 021

1   in body and mind and requests compensation for the same.

2       93.    WHEREFORE, Plaintiff, ADOLFO ESTRADA was wrongfully terminated

3   from employment with Defendant, GATE GOURMET and is seeking Compensatory

4   Damages for any and all lost income from her last date of employment with Defendant,

5   GATE GOURMET through and including the present time, including front pay, back pay

6   and any and all other legal remedies available to him.

7       94.   WHEREFORE, Plaintiff, ADOLFO ESTRADA is seeking General Damages, in

8   a sum to be determined, according to proof.

9       95.   WHEREFORE, Plaintiff, ADOLFO ESTRADA is seeking Exemplary and

10  Punitive Damages in a sum to be determined, according to proof.

### FOURTH CAUSE OF ACTION

### (Workplace Harassment)

13      96.    The allegations of Paragraphs 1 through 95 are re-alleged and incorporated

14  herein by reference. That this Cause of Action is pled as against Defendants, GATE

15  GOURMET, ANGELA JONES and each of them.

16      97.    The conduct of Defendants created a hostile work environment for Plaintiff,

17  ADOLFO ESTRADA, making the conditions of his employment intolerable in direct

18  contravention of various statutes and state law decisions, including but not limited to

19  California Government Code §12940(a).   Defendants and each of them subjected

20  Plaintiff to a hostile work environment due to, including but not limited to, repeated

21  harassment in the form of the false write-ups as a result of his gender.

22      98.    After Mr. Anderson's resignation from GATE GOURMET, Mr. ESTRADA's

23  workload began to increase every week.  Mr. ESTRADA requested assistance and

24  guidance from Ms. JONES, who instead told him to "better his time".  He asked her for

25  examples of how to better his time and with breaking down the workload but did not

26  receive any assistance nor given any suggestions.  This caused Mr. ESTRADA

27  unnecessary stress and also frustration because he tried his best to improve and asked

28  for help, however, he felt that Ms. JONES did not want to help him.

REMOVAL EXHIBIT A 022

99.   Mr. ESTRADA was discriminated against and harassed because of his gender.  He was the only male employee in his department. He was clearly treated different than the female employees.  Further, he was responsible for 500 employees, others were only responsible for 300.

100.   In or about late March 10, 2015 Ms. JONES requested to meet with Mr. ESTRADA.  Upon entering the meeting, Ms. JONES closed the door and said, "Maybe this job is not for you.  Have you ever thought about it?" Mr. ESTRADA was flabbergasted.  He did not understand why Ms. JONES would say that to him.  After his 90 day probation review there was no indication that his work performance was an issue.  She further stated to Mr. ESTRADA, "I will be more than happy to allow you to interview with the condition that if in the next 90 days you do not find a job you will be forced to resign and only corporate and myself would know about this." Mr. ESTRADA was too distraught to continue their conversation and responded, "I have work to do.  We will have to continue this conversation later." After this meeting, Mr. ESTRADA noticed that Ms. JONES' attitude toward him was very negative.

101.   On or about March 23, 2015 Mr. ESTRADA filed a Formal Complaint via email regarding Ms. JONES' unprofessional behavior in the workplace.  Also, he reported that he noticed a change in behavior from Ms. JONES' since his work related injury.  Mr. ESTRADA felt he was being discriminated against for filing a workers' compensation claim and for his gender.  Mr. ESTRADA expressed his concerns about Ms. JONES and explained how her behavior affected the entire department.  He stated that other colleagues described the Human Resources Department as "toxic" and "hostile". Mr. ESTRADA further recommended an investigation.

102.   On or about April 21, 2015 Mr. ESTRADA received a "Confidential Memorandum" from Ms. JONES notifying him that he was being placed on a Performance Improvement Plan as a result of his alleged inability to meet performance expectations.  Thereafter, Mr. ESTRADA met with Ms. JONES every two (2) weeks regarding his performance.  Mr. ESTRADA believes this was done to harass him and in retaliation for

PLAINTIFFS COMPLAINT FOR DAMAGES          22

REMOVAL EXHIBIT A 023

filing a complaint against Ms. JONES. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

103.   On or about May 13, 2015, Mr. ESTRADA's father passed away. He sent an email to Ms. JONES requesting a week off and specifically asked to use "vacation" time off. Upon Mr. ESTRADA's return, he learned that Ms. JONES has placed him on a Leave of Absence instead of the requested vacation time and was only paid for two (2) days instead of five (5). Mr. ESTRADA believes and therefore alleges that this was done to further harass him in the workplace.

104.   On or about May 28, 2015 Mr. ESTRADA received a "Confidential Memorandum" from Ms. JONES regarding Performance Improvement Plan, Follow Up Meeting wherein Ms. JONES alleges a numerous amount of false complaints regarding his work. Mr. ESTRADA believes this was done to harass him and set him up for termination. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

105.   On or about May 28, 2015 Mr. ESTRADA wrote an email to Director of Human Resources, William McGowen with his concerns regarding Ms. JONES. In his report, Mr. ESTRADA addressed his Performance Improvement Plan meeting he had with Ms. JONES. Mr. ESTRADA informed him that Ms. JONES mentioned his time management and that he did not feel Ms. JONES was understanding his explanations as to why, at times, it was difficult for him to complete his work. Also, during this meeting he asked Ms. JONES about scheduling him for the OL 101 Training because he notice that all other co-workers had taken the course. Ms. JONES said that employees who had taken the training course had been employed by the company for over a year. Mr. ESTRADA explained that he had requested training ever since his Performance Improvement Plan was issued, however, had not received it. Also, Mr. ESTRADA informed Mr. McGowen of an incident between himself and Ms. JONES where they both raised their voices at each other. Ms. JONES and Roy O. approached Mr. ESTRADA questioned his recent loss of his family member and asked if he needed additional time off, however, Mr. ESTRADA confirmed that he was okay and apologized to Ms. JONES

REMOVAL EXHIBIT A 024

1    for his tone. Others had raised their voices at Ms. JONES before, however, Mr.

2    ESTRADA believes that it was made a bigger issue because of his gender.

3        106.    In or about July, 2015 Mr. ESTRADA attended a meeting wherein he was

4    informed that their schedules would have to change to work some night. Mr. ESTRADA

5    expressed his concern about working night shift because he took his kids to school every

6    morning. A few days after the meeting, Mr. ESTRADA learned that he was the only

7    employee scheduled to work ten (10) days of graveyard shift and every other team

8    member only had to work five (5) days of graveyard shift per month. Mr. ESTRADA

9    alleges this was done to harass him because of his gender.

10        107.    On or about July 3, 2015 Mr. ESTRADA suffered injuries to his face and

11   arm, when the left side of his face and arm became numb during the course and scope of

12   his employment. Mr. ESTRADA informed the Finance Manager and Safety Department

13   that he was not feeling well and needed medical attention. He was denied medical

14   attention and told to write a statement. Thereafter, he lost feeling to the left side of his

15   body. Mr. ESTRADA became frightened and drove himself to see his doctor. His doctor

16   informed him that he showed signs of high anxiety and stress that were causing a mild

17   stroke. Mr. ESTRADA drove home and received a voice message from Ms. JONES and

18   William McGowan informing him that he was being suspended for Job Abandonment. He

19   immediately called William McGowen to explain what happened, however, Mr. McGowen

20   insisted that Mr. ESTRADA left the site without informing a member of management and

21   that was considered abandonment. He instructed Mr. ESTRADA not to return to work and

22   to write a statement.

23        108.    Mr. ESTRADA believes and therefore alleges that several other employees

24   had to take "stress leave" due to a hostile work environment, in part created by of Ms.

25   JONES.

26        109.    Approximately five (5) days thereafter, William McGowen called Mr.

27   ESTRADA and notified him that he could return to work and begin his night shift.

28        110.    On or about August 11, 2015 Mr. ESTRADA received a "Confidential

PLAINTIFFS COMPLAINT FOR DAMAGES        24

**REMOVAL EXHIBIT A 025**

1   Memorandum" from Ms. JONES regarding Performance Improvement Plan, Follow Up

2   Meeting wherein Ms. JONES alleges a numerous amount of false complaints regarding

3   his work. Mr. ESTRADA believes this was done to harass him and set him up for

4   termination. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

5       111.   On or about August 13, 2015 Mr. ESTRADA was terminated by Ms. JONES.

6   Mr. ESTRADA questioned why he was being terminated effective immediately and was

7   not eligible for re-hire by GATE GOURMET, Inc. Or by any of it subsidiary or affiliate

8   companies. Ms. JONES responded with, "Good Luck in your future endeavors." The

9   termination letter provided to Mr. ESTRADA accused him of not completing a training

10  course "learn@gate training", however, this was false. Mr. ESTRADA did, in fact,

11  complete the training course in or about mid July, 2015 (during his night shift). No

12  certification of completion was available therefore there was no proof that he complete the

13  course. Further, the letter provided information that Mr. ESTRADA's final pay would be

14  provided and would include any unused accrued vacation time, floating holidays and/or

15  compensatory time. However, Mr. ESTRADA was owed 36 hours of accumulated

16  vacation pay.

17      112.   Jaime Villanueva witnessed Ms. JONES "throwing Mr. ESTRADA under the

18  bus" because she said that Mr. ESTRADA was the reason why reports were incomplete

19  and evidence lost. Mr. ESTRADA was not aware that he was responsible for those

20  reports.

21      113.   During his employment, Mr. ESTRADA was denied the opportunity to

22  participate in the Tuition Reimbursement Program despite numerous requests. Mr.

23  ESTRADA was advised by his co-worker Esmeralda Morales that William McGowen

24  agreed to pay her tuition at Loyola Marymount. Mr. ESTRADA knew that this opportunity

25  was open to all employees who wanted to complete their education. Mr. ESTRADA

26  believes that he was denied this program because of his gender.

27      114.   As a result of the harassment Mr. ESTRADA suffered at GATE GOURMET

28  and continues to suffer from emotional distress, stress, anxiety and insomnia.

REMOVAL EXHIBIT A 026

115.    As a direct and proximate result of the wrongful, reckless, willful, unlawful, negligent, wanton and malicious conducts of GATE GOURMET, it's agent, employees, Supervisors and Managers, Plaintiff suffered job loss, loss of income, and other compensation, future income, future compensation to which Plaintiff was entitled to under Plaintiff's employment at GATE GOURMET.

116.    Such harassment and retaliation was so severe and pervasive that it altered the conditions of Plaintiff's employment, creating a hostile, abusive work environment and thereby making her working conditions intolerable. Said harassment was sufficiently extreme to amount to a change in the terms and conditions of Plaintiff's employment.

117. WHEREFORE, Plaintiff, ADOLFO ESTRADA is seeking General Damages, in a sum to be determined, according to proof.

118. WHEREFORE, Plaintiff, ADOLFO ESTRADA is seeking Exemplary and Punitive Damages in a sum to be determined, according to proof.

### FIFTH CAUSE OF ACTION
### (Disability Discrimination)

119.    The allegations of Paragraphs 1 through 118 are re-alleged and incorporated herein by reference. That this Cause of Action is pled as against Defendants, GATE GOURMET and each of them.

120.    Defendants, and each of them, were at all material times employers within the meaning of California Government Code §12940 and, as such, barred from discriminating against an employee because of the employee's disability.

121.    On or about February 3, 2015 Mr. ESTRADA suffered a head injury during the course and scope of his employment. Thereafter, Mr. ESTRADA filed a Workers' Compensation Claim.

122.    In or about late March 10, 2015 Ms. JONES requested to meet with Mr. ESTRADA. Upon entering the meeting, Ms. JONES closed the door and said, "Maybe this job is not for you. Have you ever thought about it?" Mr. ESTRADA was

PLAINTIFFS COMPLAINT FOR DAMAGES                26

REMOVAL EXHIBIT A 027

flabbergasted. He did not understand why Ms. JONES would say that to him. After his 90 day probation review there was no indication that his work performance was an issue. She further stated to Mr. ESTRADA, "I will be more than happy to allow you to interview with the condition that if in the next 90 days you do not find a job you will be forced to resign and only corporate and myself would know about this." Mr. ESTRADA was too distraught to continue their conversation and responded, "I have work to do. We will have to continue this conversation later." After this meeting, Mr. ESTRADA noticed that Ms. JONES' attitude toward him was very negative.

123.    On or about March 23, 2015 Mr. ESTRADA filed a Formal Complaint via email regarding Ms. JONES' unprofessional behavior in the workplace. Also, he reported that he noticed a change in behavior from Ms. JONES' since his work related injury. Mr. ESTRADA felt he was being discriminated against for filing a workers' compensation claim and for his gender. Mr. ESTRADA expressed his concerns about Ms. JONES and explained how her behavior affected the entire department. He stated that other colleagues described the Human Resources Department as "toxic" and "hostile". Mr. ESTRADA further recommended an investigation.

124.    On or about April 21, 2015 Mr. ESTRADA received a "Confidential Memorandum" from Ms. JONES notifying him that he was being placed on a Performance Improvement Plan as a result of his alleged inability to meet performance expectations. Thereafter, Mr. ESTRADA met with Ms. JONES every two (2) weeks regarding his performance. Mr. ESTRADA believes this was done to harass him and in retaliation for filing a complaint against Ms. JONES. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

125.    On or about May 28, 2015 Mr. ESTRADA received a "Confidential Memorandum" from Ms. JONES regarding Performance Improvement Plan, Follow Up Meeting wherein Ms. JONES alleges a numerous amount of false complaints regarding his work. Mr. ESTRADA believes this was done to harass him and set him up for termination. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

REMOVAL EXHIBIT A 028

126.  On or about May 28, 2015 Mr. ESTRADA wrote an email to Director of Human Resources, William McGowen with his concerns regarding Ms. JONES. In his report, Mr. ESTRADA addressed his Performance Improvement Plan meeting he had with Ms. JONES.  Mr. ESTRADA informed him that Ms. JONES mentioned his time management and that he did not feel Ms. JONES was understanding his explanations as to why, at times, it was difficult for him to complete his work.  Also, during this meeting he asked Ms. JONES about scheduling him for the OL 101 Training because he notice that all other co-workers had taken the course.  Ms. JONES said that employees who had taken the training course had been employed by the company for over a year. Mr. ESTRADA explained that he had requested training ever since his Performance Improvement Plan was issued, however, had not received it.  Also, Mr. ESTRADA informed Mr. McGowen of an incident between himself and Ms. JONES where they both raised their voices at each other.  Ms. JONES and Roy O. approached Mr. ESTRADA questioned his recent loss of his family member and asked if he needed additional time off, however, Mr. ESTRADA confirmed that he was okay and apologized to Ms. JONES for his tone.

127.  On or about July 3, 2015 Mr. ESTRADA suffered injuries to his face and arm, when the left side of his face and arm became numb during the course and scope of his employment.  Mr. ESTRADA informed the Finance Manager and Safety Department that he was not feeling well and needed medical attention.  He was denied medical attention and told to write a statement.  Thereafter, he lost feeling to the left side of his body.  Mr. ESTRADA became frightened and drove himself to see his doctor.  His doctor informed him that he showed signs of high anxiety and stress that were causing a mild stroke.  Mr. ESTRADA drove home and received a voice message from Ms. JONES and William McGowan informing him that he was being suspended for Job Abandonment.  He immediately called William McGowen to explain what happened, however, Mr. McGowen insisted that Mr. ESTRADA left the site without informing a member of management and that was considered abandonment.  He instructed Mr. ESTRADA not to return to work and

REMOVAL EXHIBIT A 029

1    to write a statement. Mr. ESTRADA filed a Workers' Compensation Claim arising out of

2    this incident.

3         128.    Mr. ESTRADA believes and therefore alleges that several other employees

4    had to take "stress leave" due to a hostile work environment, in part created by of Ms.

5    JONES.

6         129.    On or about July 4, 2015 Paula Morales called Mr. ESTRADA advising him

7    to go to a clinic.

8         130.    Approximately five (5) days thereafter, William McGowen called Mr.

9    ESTRADA and notified him that he could return to work and begin his night shift.

10         131.    On or about August 11, 2015 Mr. ESTRADA received a "Confidential

11    Memorandum" from Ms. JONES regarding Performance Improvement Plan, Follow Up

12    Meeting wherein Ms. JONES alleges a numerous amount of false complaints regarding

13    his work. Mr. ESTRADA believes this was done to harass him and set him up for

14    termination. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

15         132.    On or about August 13, 2015 Mr. ESTRADA was terminated by Ms. JONES.

16    Mr. ESTRADA questioned why he was being terminated effective immediately and was

17    not eligible for re-hire by GATE GOURMET, Inc. Or by any of it subsidiary or affiliate

18    companies. Ms. JONES responded with, "Good Luck in your future endeavors." The

19    termination letter provided to Mr. ESTRADA accused him of not completing a training

20    course "learn@gate training", however, this was false.  Mr. ESTRADA did, in fact,

21    complete the training course in or about mid July, 2015 (during his night shift).  No

22    certification of completion was available therefore there was no proof that he complete the

23    course.  Further, the letter provided information that Mr. ESTRADA's final pay would be

24    provided and would include any unused accrued vacation time, floating holidays and/or

25    compensatory time.  However, Mr. ESTRADA was owed 36 hours of accumulated

26    vacation pay.

27         133.    On or about August 13, 2015 Mr. ESTRADA filed a Workers' Compensation

28    Claim for injuries he suffered to his psyche, cerebrovascular system, abdomen and

REMOVAL EXHIBIT A 030

repetitive trauma between the dates of September 15, 2014 to April 29, 2015.

134.    As a result of the disability discrimination Mr. ESTRADA suffered at GATE GOURMET and continues to suffer from emotional distress, stress, anxiety and insomnia.

135.    WHEREFORE, Plaintiff, ADOLFO ESTRADA contends that he was injured in body and mind and requests compensation for the same.

136.    WHEREFORE, Plaintiff, ADOLFO ESTRADA was wrongfully terminated from his employment with Defendants, GATE GOURMET and is seeking Compensatory Damages for any and all lost income from her last date of employment with Defendants, GATE GOURMET through and including the present time, including front pay, back pay and any and all other legal remedies available to his.

137.    WHEREFORE, Plaintiff, ADOLFO ESTRADA is seeking General Damages, in a sum to be determined, according to proof.

138.    WHEREFORE, Plaintiff, ADOLFO ESTRADA is seeking Exemplary and Punitive Damages in a sum to be determined, according to proof.

### SIXTH CAUSE OF ACTION

### (Retaliation for Engaging in Protected Activity)

### (Cal. Government Code § 12940)

139.    The allegations of Paragraphs 1 through 138, are re-alleged and incorporated herein as though fully set forth. This Cause of Action is pleaded as against Defendants, GATE GOURMET and each of them.

140.    Defendants, and each of them have retaliated against Plaintiff, ADOLFO ESTRADA in violation of Government Code §12940, by engaging in a course of retaliatory conduct, including, among other things, the conduct set forth in Paragraphs 1 through 32 above, when Plaintiff exercised his rights in filing a workers compensation claim. This retaliation was ongoing and continuous until his termination.

141.    WHEREFORE, Plaintiff, ADOLFO ESTRADA contends that he was injured in body and mind and requests compensation for the same.

142.    WHEREFORE, Plaintiff, ADOLFO ESTRADA was wrongfully terminated

REMOVAL EXHIBIT A 031

from his employment with Defendant, GATE GOURMET and is seeking Compensatory Damages for any and all lost income from his last date of employment with Defendant GATE GOURMET through and including the present time, including front pay, back pay and any and all other legal remedies available to him.

143.    WHEREFORE, Plaintiff, ADOLFO ESTRADA is seeking General Damages, in a sum to be determined, according to proof.

144.    WHEREFORE, Plaintiff, ADOLFO ESTRADA is seeking Exemplary and Punitive Damages in a sum to be determined, according to proof.

### SEVENTH CAUSE OF ACTION

### (Failure to Prevent Discrimination, Harassment and/or Retaliation)

145.    The allegations of Paragraphs 1 through 144, are realleged and incorporated herein by reference. That this Cause of Action is pled as against Defendants, GATE GOURMET and each of them.

146.    That Defendants failed to take all reasonable steps to prevent discrimination, harassment and/or retaliation against Plaintiff, ADOLFO ESTRADA from occurring, and to take immediate and appropriate corrective actions to remedy the discrimination, harassment and/or retaliation, in violation of California Government Code § 12940, by engaging in the course of conduct set forth in Paragraphs 1 through 144, among other things.

147.    WHEREFORE, Plaintiff, ADOLFO ESTRADA contends that he was injured in body and mind and requests compensation for the same.

148.    WHEREFORE, Plaintiff, ADOLFO ESTRADA was wrongfully terminated and is seeking Compensatory Damages for any and all lost income from the time he was terminated to the present and any and all other legal remedies available to him.

149.    WHEREFORE, Plaintiff, ADOLFO ESTRADA is seeking General Damages, in a sum to be determined, according to proof.

150.    WHEREFORE, Plaintiff, ADOLFO ESTRADA is seeking Exemplary and Punitive Damages in a sum to be determined, according to proof.

REMOVAL EXHIBIT A 032

### EIGHTH CAUSE OF ACTION

### (Failure to Provide Environment Free from

### Discrimination, Harassment and/or Retaliation)

151.    The allegations of Paragraphs 1 through 150, are realleged and incorporated herein by reference. That this Cause of Action is pled as against Defendants, GATE GOURMET and each of them.

152.    That Defendants, GATE GOURMET failed to take all reasonable steps to prevent discrimination against Mr. ESTRADA from occurring, and to take immediate and appropriate corrective actions to remedy the discrimination, in violation of California Government Code § 12940, by engaging in the course of conduct set forth in Paragraphs 1 through 32, among other things.

153.    During Mr. ESTRADA's 90 day probation period, he was not provided with training regarding company policies nor procedures. Mr. ESTRADA continually requested formal training on policies and procedures from Ms. JONES, verbally and in writing, but to no avail.

154.    On or about December 15, 2014, Mr. ESTRADA met with James Anderson. During this meeting Mr. ESTRADA learned that the reason he was hired was because of his gender. Mr. Anderson told Mr. ESTRADA that he was hired because he was male and there would not be any drama. He further explained that, "the Human Resources Department had been going through a lot drama because it was all female." These comments made Mr. ESTRADA feel uncomfortable. Mr. ESTRADA had over eight (8) years of experience and training in Human Resources and his gender had never been a factor for being hired.

155.    A few weeks later, James Anderson resigned from GATE GOURMET. After Mr. Anderson's resignation, Mr. ESTRADA's workload began to increase every week. Mr. ESTRADA requested assistance and guidance from Ms. JONES, who instead told him to

PLAINTIFFS COMPLAINT FOR DAMAGES                    32

REMOVAL EXHIBIT A 033

"better his time".  He asked her for examples of how to better his time and with breaking

down the workload but did not receive any assistance nor given any suggestions.  This

caused Mr. ESTRADA unnecessary stress and also frustration because he tried his best

to improve and asked for help, however, he felt that Ms. JONES did not want to help him.

156.   Mr. ESTRADA was discriminated against and harassed because of his

gender.  He was the only male employee in his department.  He was clearly treated

different than the female employees.  Further, he was responsible for 500 employees,

others were only responsible for 300.

157.   In or about late March 10, 2015 Ms. JONES requested to meet with Mr.

ESTRADA.  Upon entering the meeting, Ms. JONES closed the door and said, "Maybe

this job is not for you.  Have you ever thought about it?" Mr. ESTRADA was

flabbergasted.  He did not understand why Ms. JONES would say that to him.  After his 90

day probation review there was no indication that his work performance was an issue.  She

further stated to Mr. ESTRADA, "I will be more than happy to allow you to interview with

the condition that if in the next 90 days you do not find a job you will be forced to resign

and only corporate and myself would know about this." Mr. ESTRADA was too distraught

to continue their conversation and responded, "I have work to do.  We will have to

continue this conversation later." After this meeting, Mr. ESTRADA noticed that Ms.

JONES' attitude toward him was very negative.

158.   On or about March 23, 2015 Mr. ESTRADA filed a Formal Complaint via

email regarding Ms. JONES' unprofessional behavior in the workplace.  Also, he reported

that he noticed a change in behavior from Ms. JONES' since his work related injury.  Mr.

ESTRADA felt he was being discriminated against for filing a workers' compensation claim

and for his gender.  Mr. ESTRADA expressed his concerns about Ms. JONES and

explained how her behavior affected the entire department.  He stated that other

colleagues described the Human Resources Department as "toxic" and "hostile". Mr.

ESTRADA further recommended an investigation.

159.   On or about April 21, 2015 Mr. ESTRADA received a "Confidential

REMOVAL EXHIBIT A 034

Memorandum" from Ms. JONES notifying him that he was being placed on a Performance Improvement Plan as a result of his alleged inability to meet performance expectations. Thereafter, Mr. ESTRADA met with Ms. JONES every two (2) weeks regarding his performance. Mr. ESTRADA believes this was done to harass him and in retaliation for filing a complaint against Ms. JONES. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

160.   On or about May 13, 2015, Mr. ESTRADA's father passed away. He sent an email to Ms. JONES requesting a week off and specifically asked to use "vacation" time off. Upon Mr. ESTRADA's return, he learned that Ms. JONES has placed him on a Leave of Absence instead of the requested vacation time and was only paid for two (2) days instead of five (5). Mr. ESTRADA believes and therefore alleges that this was done to further harass him in the workplace.

161.   On or about May 28, 2015 Mr. ESTRADA received a "Confidential Memorandum" from Ms. JONES regarding Performance Improvement Plan, Follow Up Meeting wherein Ms. JONES alleges a numerous amount of false complaints regarding his work. Mr. ESTRADA believes this was done to harass him and set him up for termination. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

162.   On or about May 28, 2015 Mr. ESTRADA wrote an email to Director of Human Resources, William McGowen with his concerns regarding Ms. JONES. In his report, Mr. ESTRADA addressed his Performance Improvement Plan meeting he had with Ms. JONES. Mr. ESTRADA informed him that Ms. JONES mentioned his time management and that he did not feel Ms. JONES was understanding his explanations as to why, at times, it was difficult for him to complete his work. Also, during this meeting he asked Ms. JONES about scheduling him for the OL 101 Training because he notice that all other co-workers had taken the course. Ms. JONES said that employees who had taken the training course had been employed by the company for over a year. Mr. ESTRADA explained that he had requested training ever since his Performance Improvement Plan was issued, however, had not received it. Also, Mr. ESTRADA

REMOVAL EXHIBIT A 035

informed Mr. McGowen of an incident between himself and Ms. JONES where they both raised their voices at each other. Ms. JONES and Roy O. approached Mr. ESTRADA questioned his recent loss of his family member and asked if he needed additional time off, however, Mr. ESTRADA confirmed that he was okay and apologized to Ms. JONES for his tone. Others had raised their voices at Ms. JONES before, however, Mr. ESTRADA believes that it was made a bigger issue because of his gender.

163.    In or about July, 2015 Mr. ESTRADA attended a meeting wherein he was informed that their schedules would have to change to work some night. Mr. ESTRADA expressed his concern about working night shift because he took his kids to school every morning. A few days after the meeting, Mr. ESTRADA learned that he was the only employee scheduled to work ten (10) days of graveyard shift and every other team member only had to work five (5) days of graveyard shift per month. Mr. ESTRADA alleges he was discriminated against because of his gender.

164.    On or about July 3, 2015 Mr. ESTRADA suffered injuries to his face and arm, when the left side of his face and arm became numb during the course and scope of his employment. Mr. ESTRADA informed the Finance Manager and Safety Department that he was not feeling well and needed medical attention. He was denied medical attention and told to write a statement. Thereafter, he lost feeling to the left side of his body. Mr. ESTRADA became frightened and drove himself to see his doctor. His doctor informed him that he showed signs of high anxiety and stress that were causing a mild stroke. Mr. ESTRADA drove home and received a voice message from Ms. JONES and William McGowan informing him that he was being suspended for Job Abandonment. He immediately called William McGowen to explain what happened, however, Mr. McGowen insisted that Mr. ESTRADA left the site without informing a member of management and that was considered abandonment. He instructed Mr. ESTRADA not to return to work and to write a statement. Mr. ESTRADA filed a Workers' Compensation Claim arising out of this incident.

165.    Mr. ESTRADA believes and therefore alleges that several other employees

REMOVAL EXHIBIT A 036

had to take "stress leave" due to a hostile work environment, in part created by of Ms. JONES.

166.    Approximately five (5) days thereafter, William McGowen called Mr. ESTRADA and notified him that he could return to work and begin his night shift.

167.    On or about August 11, 2015 Mr. ESTRADA received a "Confidential Memorandum" from Ms. JONES regarding Performance Improvement Plan, Follow Up Meeting wherein Ms. JONES alleges a numerous amount of false complaints regarding his work. Mr. ESTRADA believes this was done to harass him and set him up for termination. As such, Mr. ESTRADA refused to sign the Confidential Memorandum.

168.    On or about August 13, 2015 Mr. ESTRADA was terminated by Ms. JONES. Mr. ESTRADA questioned why he was being terminated effective immediately and was not eligible for re-hire by GATE GOURMET, Inc. Or by any of it subsidiary or affiliate companies. Ms. JONES responded with, "Good Luck in your future endeavors." The termination letter provided to Mr. ESTRADA accused him of not completing a training course "learn@gate training", however, this was false. Mr. ESTRADA did, in fact, complete the training course in or about mid July, 2015 (during his night shift). No certification of completion was available therefore there was no proof that he complete the course. Further, the letter provided information that Mr. ESTRADA's final pay would be provided and would include any unused accrued vacation time, floating holidays and/or compensatory time. However, Mr. ESTRADA was owed 36 hours of accumulated vacation pay.

169.    On or about August 13, 2015 Mr. ESTRADA filed a Workers' Compensation Claim for injuries he suffered to his psyche, cerebrovascular system, abdomen and repetitive trauma between the dates of September 15, 2014 to April 29, 2015.

170.    Jaime Villanueva witnessed Ms. JONES "throwing Mr. ESTRADA under the bus" because she said that Mr. ESTRADA was the reason why reports were incomplete and evidence lost. Mr. ESTRADA was not aware that he was responsible for those

REMOVAL EXHIBIT A 037

1  reports.

2      171.   During his employment, Mr. ESTRADA was denied the opportunity to

3  participate in the Tuition Reimbursement Program despite numerous requests. Mr.

4  ESTRADA was advised by his co-worker Esmeralda Morales that William McGowen

5  agreed to pay her tuition at Loyola Marymount. Mr. ESTRADA knew that this opportunity

6  was open to all employees who wanted to complete their education.  Mr. ESTRADA

7  believes that he was denied this program because of his gender.

8      172.   As a result of the gender discrimination, harassment, disability discrimination

9  and retaliation Mr. ESTRADA suffered at GATE GOURMET and continues to suffer from

10  emotional distress, stress, anxiety and insomnia.

11      173.   WHEREFORE, Plaintiff, Mr. ESTRADA contends that he was injured in body

12  and mind and requests compensation for the same.

13      174.   WHEREFORE, Plaintiff, Mr. ESTRADA was wrongfully terminated from him

14  employment with Defendants and is seeking Compensatory Damages for any and all lost

15  income from his last date of employment with Defendants through and including the

16  present time, including front pay, back pay and any and all other legal remedies available

17  to him.

18      175.   WHEREFORE, Plaintiff, Mr. ESTRADA  is seeking General Damages, in a

19  sum to be determined, according to proof.

20      176.   WHEREFORE, Plaintiff, Mr. ESTRADA  is seeking Exemplary and Punitive

21  Damages in a sum to be determined, according to proof.

22                    **NINTH CAUSE OF ACTION**

23                     **(Loss of Consortium)**

24      177.   The allegations of Paragraphs 1 through 176 are re-alleged and

25  incorporated herein by reference.  That this Cause of Action is pled by Plaintiff,

26  LOURDES ESTRADA, only, as against Defendants, GATE GOURMET, ANGELA JONES,

27  and each of them.

28      178.   Plaintiff, ADOLFO ESTRADA and Plaintiff, LOURDES ESTRADA are legally

PLAINTIFFS COMPLAINT FOR DAMAGES          37

Inter-married and at all times relevant to this action were, and are, husband and wife.

179.   Prior to the physical and emotional injuries, Plaintiff, ADOLFO ESTRADA was able to and did perform his duties as a husband.  Subsequent to the injuries and as a proximate result thereof, plaintiff's spouse has been unable to perform the necessary duties as a husband and the work and services usually performed in the care, maintenance and management of the family home and his employment, and plaintiff's spouse will be unable to perform such work, services and duties in the future.  By reason thereof, plaintiff has been permanently deprived and will be deprived of the consortium of plaintiff's spouse, including the performance of her spouse's necessary duties, all to plaintiff's damage, in an amount to be determined according to proof.

## PRAYER FOR RELIEF AND DAMAGES

WHEREFORE, Plaintiffs, ADOLFO ESTRADA and LOURDES ESTRADA request relief as follows:

1.   For special and economic damages, including back pay and front pay for all Causes of Action;

2.   For general and non-economic damages for all Causes of Action;

3.   For exemplary and punitive damages according to proof for all Causes of Action;

4.   For prejudgment interest at the prevailing legal rate;

5.   For costs of suit;

6.   For attorney fees as applicable; and

7.   For any such other and further relief as the Court may deem just and proper.

///
///
///
///
///
///

REMOVAL EXHIBIT A 039

## DEMAND FOR JURY TRIAL

Plaintiffs, Plaintiffs, ADOLFO ESTRADA and LOURDES ESTRADA hereby demand a trial by jury in this matter.

DATED: December 15, 2016            LAW OFFICES OF PHILIP P. DeLUCA

PHILIP P. DeLUCA, Esq.
Attorney for Plaintiffs,
ADOLFO ESTRADA and LOURDES ESTRADA

REMOVAL EXHIBIT A 040




## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

**COURTHOUSE ADDRESS:** Southwest District 825 Maple Ave. Torrance, Ca. 90503

DEC 19 2016

**PLAINTIFF:** ESTRADA

Sherri R. Carter, Executive Officer/Clerk

**DEFENDANT:** GATE GOURMET

By Y. Husen, Deputy

**NOTICE OF CASE MANAGEMENT CONFERENCE**

**CASE NUMBER:** YC071760

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date: 5-06-17 | Time: 8:30 | Dept: D |

NOTICE TO DEFENDANT: THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: DEC 19 2016

STUART M. RICE

Judicial Officer

### CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☐ by depositing in the United States mail at the courthouse in _____, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☑ by personally giving the party notice upon filing of the complaint.

Dated: DEC 19 2016

SHERRI R. CARTER, Executive/Officer Clerk

Y. Husen

By _____
Deputy Clerk

LACIV 132 (Rev. 07/13)
LASC Approved 10-03
For Optional Use

## NOTICE OF
## CASE MANAGEMENT CONFERENCE

Cal. Rules of Court, rules 3.720-3.730

LASC Local Rules, Chapter Three

REMOVAL EXHIBIT A 041